All right, we'll call the first case United States v. Roy Allen Green. Good afternoon, Your Honor, and may it please the Court. Frederick Ulrich, I'm an assistant federal public defender in the Middle District of Pennsylvania, and I represent the appellant Roy Allen Green. I'd like to reserve two minutes of my time for rebuttal. That will be granted. Addressing the timeliness issue, which was the basis upon which the District Court dismissed Mr. Green's petition first, and it's also the initial argument of the government, it's our position that to clear the statute of limitations hurt, Mr. Green needed to do three things. One, assert a right. Two, a newly recognized one, and three, one that's retroactive. This much he did. He asserted that the rule or right announced in Johnson applied to identical language and another mandatory sentencing scheme. And for that reason, he satisfied the limitations curtailed in 2255 F3. How is it a newly recognized right if the right asserted by the Supreme Court is in a totally different context? It's not a totally different context, at least in our view. The language is identical. The mandatory scheme is substantially similar. It was under the Armed Career Criminal Act. It was not in the Armed Career Criminal Act, but we think that the discrete holding in the Armed Career Criminal Act setting by Johnson doesn't necessarily preclude the rule or right that the court announced, particularly when you're dealing with identical language. Doesn't Justice Thomas' language in Beckles shed light on that issue? Justice Thomas' opinion, yes, says that we're in an advisory guideline system, and so therefore the rule does not extend to a different scheme in that sense, but we're in a mandatory system. So Beckles, I mean, didn't Beckles recognize that this was an open question, the one that you're saying now is a right? Well, it's true that Justice Sotomayor did put a footnote in Beckles that said this is an open question, but just because it's an open question doesn't mean the right doesn't exist otherwise. Even Justice Thomas kept saying repeatedly this applies only to the advisory guidelines. That's correct. He's taking the rule from Johnson. He's saying, well, we're not going to extend it to the advisory guideline context. He was pretty careful in crafting the opinion that way. It doesn't apply, therefore, to the mandatory guidelines. We believe it does, and it's a whole lot different when you're dealing with a mandatory sentencing scheme like the mandatory guidelines. This court certainly didn't have any problem applying it initially in Calabretta because the language is the same. So the only difference really is whether the mandatory scheme is enough to make this like a mandatory sentencing provision. Well, Justice Sotomayor in that same footnote says we fix sentences under the mandatory guidelines the same way that a mandatory sentence fixes sentences, and for that reason we think we're basically in the same ballpark. You know, if the guidelines were mandatory, how is it that I sat on so many cases involving departures and variances? I mean, that's a fact. Well, there certainly were exceptions to the mandatory guidelines sentencing scheme, just like there's exceptions to the mandatory sentences. You can get a safety valve exception or departure under 5K. The Supreme Court pretty much brushed that aside, though, in Booker, and really we don't believe it makes any difference in this particular circumstance. Further, we think the Seventh Circuit's more recent ruling in Cross sheds additional light on how the statute of limitations provision ought to be construed. There the court said there's nothing in Section 2255F3 that says you've got to prove up your claim in order to satisfy the statute of limitations provision. You simply have to claim the benefit of the right, and that's exactly what Mr. Green did here. By taking a merits analysis Doesn't the Seventh Circuit opinion read recognized out of the statute? The Fourth Circuit in Brown basically pointed out, by definition, something's not recognized when it's left open. So I'm not sure about the Seventh Circuit's analysis. Obviously, right isn't defined within Section 2255. Neither is rule, for that matter. But recognized is, and we've got the Supreme Court saying that this is open. It's a concern, and that's sort of one of my concerns about the Seventh Circuit opinion. It seems to read recognized right out of the statute. The First Circuit seems to have taken the same position, albeit in the context of a second or subsequent filing. But be that as it may, you can recognize a rule or a right that's at the heart of a case without saying you've got to wait until there's a discreet application of it in a different fact paradigm. And I think that's all Mr. Green's certainly asking for here. But isn't that what Beckles really stands for? You have to wait until we reach that issue before you have a right that you can assert? Well, you might be able to. We would read it, as Beckles is crafting, basically an exception to a rule that was otherwise. Why use advisory so many times in the opinion? Why contrast the advisory guidelines with the mandatory guidelines at one point in the opinion? It's because you're crafting an exception to the rule. The fact of the matter is that if you take and conflate these two things, making individuals in Mr. Green's position establish not only that they filed timely within one year of the decision, but also that they can satisfy the merits, you've kind of changed the way a statute of limitations operates. Let's say Mr. Green had an argument that his privacy interests were violated by the government when they seized some electronic records. And he filed his claim within a couple of years, within the limitations period. He wouldn't have to prove that there's some sort of judicially recognized or statutorily recognized right to privacy to satisfy the limitations period. That's a determination. All he's asking for here is that the same language be construed the same way. Yes, in a different mandatory scheme, but it functions the same way. That's really the problem that we're grappling with. This is a different statutory scheme. But it functions the same way. And so there really isn't a practical difference. The advisory guidelines should be considered as functioning the same way as the mandatory guidelines. Well, Justice Sotomayor thought they should be. And that's the reason for her concurring opinion. But the court determined that they didn't function the same way. She almost explicitly said these don't apply out of the context in which we are addressing the issue. Well, it doesn't appear that she's necessarily construing the recognition of the right any differently in her concurring opinion. I still think, and we still think, you can recognize the right and simply apply it in another context if everything's the same. If we disagree with you, he still has the right to make the application, doesn't he, when the right context appears? Well, I'm pretty sure he may. I mean, he does have a year in which to make an application once the Supreme Court recognizes his right to make a challenge on the basis of the mandatory guidelines. Well, here's the problem with that sort of paradigm. If we're going to knock all these guys out because of the statute of limitations or timeliness issue, well, how the heck are they going to get there? Most of them are in the context of a second or subsequent filing. If they don't get a certificate of appealability, you can't appeal it to the Supreme Court. So most of these guys would be precluded, a vast majority of them would be precluded from any sort of relief. Now, as it turns out, Mr. Green was an initial filer, but he's still knocked out. It's very hard then to get a case up there and get the right recognized. Maybe that's what the Seventh Circuit is going to accomplish. Well, it certainly sharpens the wheel. Now there's a circuit to play. And there's one on both the initial filers and the second or subsequent filers as well. But here we're not asking for anything different. And if you take a look at the Court's more recent decision in DiMaia, it's the same. The Court didn't have to fish around for some rule or craft one out of whole cloth. They had a rule. They simply applied it. They applied it directly to Section 16B, which, by the way, was an extension. That statute's not identically worded to the residual clause in the Armed Career Criminal Act. So the Court there, if all you need to do is look at Chief Justice Roberts' dissenting opinion, he certainly thinks there's a rule that's going to have application in a number of other contexts besides 16B and besides the Armed Career Criminal Act. So he's recognizing that this right or rule isn't tied necessarily to the discrete holding. And that's the reason we think both Raybon, all of which, Raybon, Brown, and Greer, define the recognition of this right far more narrowly than is necessary under Section 2255F3. Turning to the government's Teague argument, we think it fails for the same reasons. They claim that you can't make a vagueness challenge to the guidelines because it hasn't been done before. But that's just a different way of saying that Johnson doesn't apply in this circumstance. And further, they argue that this is a procedural argument we're making. But the fact of the matter is if you're sentenced as a career offender, that's a significant enhancement that the Court was basically required to impose at the time of sentencing. And so it's substantive in the same way that it was substantive in Johnson. And with respect to procedural default, we believe that the fact that there was basically a sea change with Johnson in which precedent was shifted dramatically, nobody anticipated it, not the government, not the courts, and certainly not the defendants, that you can't fault somebody in Mr. Green's situation for having failed to raise a Johnson claim before Johnson existed. So what the government says, I mean, I guess you have to recognize that Green didn't raise vagueness concerns at his original sentencing. That's true. Green did not raise a vagueness concern at his original sentencing, but then again, hardly anybody would have. It simply wasn't on anybody's radar. And those are good reasons under Reed v. Ross because it's a novel constitutional or an abrupt shift in the institution. But is there prejudice? Wouldn't he have qualified as a career offender anyway? It's not entirely clear. Well, first of all, they didn't introduce any Shepard documents. They never, you know, stuck with basically looking at these statutes, one in California based on the least determinative thing. And there is a decision from the Ninth Circuit saying that perhaps the robbery wouldn't satisfy the generic crime necessary under the categorical approach. One other point I'd make is the government's position in a lot of respects on this timeliness issue is very similar to what they were arguing in the second or subsequent context, for instance, with Hofner. They basically said you're not relying on a new rule of constitutional law because it hasn't been applied over here in this context. The court rejected that analysis in Hofner. We think they should do so here. We should do so here. What is his current sentence? Could you? I'm sorry. His current sentence. Oh, he has two sentences, one from the Ninth Circuit. I think his release date from the Ninth Circuit is 2050. But his sentence in this particular case was 151 months. Okay. Judge Greenberg, do you have any other questions? No, I don't. Okay. Thank you, counsel. We'll hear from the governor. Good afternoon, Your Honors. May it please the Court, John Pelletier on behalf of the United States. I'd like to first address the procedural bars and then, if possible, the merits. The procedural bars, firstly, is the timeliness issue, the statute of limitations. We agree with Mr. Green that there are three inquiries that are relevant here. The motion here is timely only if Mr. Green asserted a right in his motion that has been recognized by the Supreme Court within a year prior to his filing of the motion. So that requires, number one, determining what right is asserted by Mr. Green. He says he did it within a year of Johnson's. Correct. That's their argument. And there's a difference between the right recognized in Johnson and the right asserted in Mr. Green's petition. The right asserted in the petition is the right not to be sentenced under the mandatory guidelines under a allegedly vague residual clause in the career offender guideline. The right recognized in Johnson is a right not to be sentenced under a statute that establishes a mandatory minimum and maximum that's different based on a statutory residual clause in the Armed Career Criminal Act. Now, in order to extend Johnson to the circumstances here, the court has to recognize that the vagueness doctrine applies to a mandatory guidelines regime. And the Supreme Court has never recognized that right to challenge the mandatory guidelines. It doesn't recognize it, but why isn't he right about that? To turn to the matter, Your Honor? Well, there's important differences between the mandatory guidelines and a statute such the Armed Career Criminal Act. Now, Beckles discusses statutes that fix a sentence. And those are the types of laws and statutes that fix sentence are subject to vagueness challenges. And the mandatory guidelines, albeit mandatory, were not statutes that fixed sentence. I think Judge Greenberg alluded to just prior to now that he sat on a number of panels that dealt with available under the mandatory guidelines regime. In Beckles, I mean, reading that, it focuses really heavily on the advisory nature of the guidelines. Doesn't that indicate the mandatory guidelines should be viewed differently? Certainly, the holding of Beckles is limited to the advisory guidelines. And part of the reasoning was certainly the advisory aspect of it. But the core of the Beckles applies also to the mandatory guidelines, the notion of a statute fixing sentence, and the important differences between the mandatory guidelines and the statutes such as the Armed Career Criminal Act. So if you look at, for example, the way this court treated the guidelines versus the statute under Rule 11, or the Supreme Court treated the mandatory guidelines in the context of the definition of a serious drug crime in the Armed Career Criminal Act, under Rule 11, that provides that a defendant had to be provided notice of the mandatory minimum penalty provided by law and also the maximum possible penalty provided by law. In Henry, this court concluded that that does not refer to the minimum and maximum range under the mandatory guidelines because departures are available. And so therefore, the maximum and minimum penalty provided by law is the statutory minimum and maximum. Similarly, in the Rodriguez decision, Justice Alito determined that the phrase maximum prescribed by law in the Armed Career Criminal Act definition of serious drug crime does not refer to the top range of a mandatory guidelines range. It refers to the statutory maximum because departures are available. So the outer limits of a mandatory guidelines range is permeable. It's not inviolable to the same extent that a mandatory maximum or minimum statutory maximum minimum circumstance is. Even in 2002, when Mr. Green was sentenced, there were, if you look to the statistics of the Sentencing Commission, 17.6% of the sentences at that time were departures, were non-government-sponsored departures from the mandatory guidelines range, and 17.6% of sentences. And that's not that much different than the amount of non-government-sponsored departures and variances in 2017, which were 22.6% under the advisory guidelines. You know, Counselor, you raised a question that I've always wondered. Does the effect of making the guidelines advisory, has anyone studied whether it really made much difference in sentencing? In other words, you could go back and look at sentences under the guidelines when they were mandatory, so-called mandatory, and you can look at them when they're advisory and whether they're coming out different. Well, what I've been able to look at, Your Honor, are the statistics from the Sentencing Commission. I'm not sure an exhaustive study of all the factors about whether it made a difference has been done, but certainly the statistics from the Sentencing Commission suggest that it wasn't a huge shift. It wasn't an overwhelming shift, particularly after the Supreme Court, which was in 1996. That affirmed the discretion of district courts to depart from the mandatory guidelines, and after district courts actively exercised that discretion. Now, there was the PROTECT Act in 2003, which again limited that discretion, but that was only in effect for about a year and a half before Booker was decided. So if you look at the Coon era and then now, based on the statistics I've been able to find, there were 17.6% of non-government-sponsored departures in 2002, which was the year of Mr. Green's sentencing, and there were 22.6% of either non-government-sponsored departures or variances last year, which suggests not a huge shift. Did I ask you, after briefing in this case, of course, the 730 side of the cross case, maybe you can address that. Absolutely, Your Honor. Now, there are two aspects of that case I'd like to address. Number one is timeliness, and the other is retroactivity. The timeliness aspect of it, in our view, the court read out both the term assert and the term recognize in the statutory language. The language requires that we determine what if the rug aren't being asserted in the 2255 motion. In cross, the Seventh Circuit effectively read out assert and adopted basically a pleading requirement. A defendant just has to allude to or cite to a Supreme Court case decided within the past year that recognizes a retroactive right. Well, I'm not following you. I mean, and the Seventh Circuit nonetheless held that the mandatory guidelines recisional clause was unconstitutionally vague under Johnson. It's a holding that seems to favor Mr. Green in this case completely. Oh, absolutely. They held that if you hop over the time in the statute of limitations and you conclude that the mandatory guidelines are... I mean, the Seventh Circuit apparently felt that it was timely. It did, and the reason it got there is because it didn't apply the language of the statute of limitations of 2255F, which requires, number one, a valid rule... So what you're saying is that it was wrongly decided procedurally? It was wrongly decided under the statute. It misapplied, misinterpreted, and misapplied the statute of limitations language in 2255F. It was aware of it, wasn't it? It was aware of it, and it misinterpreted. So we disagree with the Seventh Circuit's interpretation and application of 2255F. Because the court didn't look to what the defendant in that case actually asserted, it just assumed that because the defendant is basically alluded to... Can you address the substantive decision of the Seventh Circuit? The substantive decision, there are two aspects of the substantive decision. One is, are the mandatory guidelines subject to vagueness challenges? And we disagree with the Seventh Circuit's holding there. And we discussed that for the reasons why Beckles is, in our view, it answers that open, but we think the teaching of Beckles results in the conclusion that the mandatory guidelines are not subject to vagueness challenges. Does it matter that Justice Sotomayor's comments were in a concurrence, not in a majority opinion? No, because I don't think there's any disagreement that that was an open question, whether the mandatory guidelines are subject to vagueness challenges. I think that was, she was just, her concurrence just confirms the fact that it's open, and that this court has not addressed it. And that's why the court has not recognized that the mandatory guidelines are subject to vagueness. It's new, and if you look at the Padilla-Chavez line of decisions, those shed some light on why the right that's asserted in Mr. Green's motion has not been recognized by the Supreme Court. Can we address that issue like the Seventh Circuit did, or is that an issue that is only within the prerogative of the Supreme Court? Which issue, Your Honor? Whether the mandatory guidelines are subject to vagueness? Yes, sir. Well, first of all, we've asserted timeliness, so the court has to address whether it's timely. And also, you'd have to address retroactivity. And both of those throw this out before you get to the merits. You'd have to, number one, you'd have to find that it's time-limited statute of limitations. Number two, you'd have to find that it's retroactive, that the right he asserted is retroactive. With respect to retroactivity, I mean, Welsh, you've read the Welsh case, of course, why wouldn't, I mean, I guess Welsh held that Johnson was retroactive. Why wouldn't, if we disagree with you, I guess, on your first point, why wouldn't this be retroactive? Or, you know, Beckles or Welsh? Welsh teaches that to determine whether a right or a rule is retroactive, you have to look to the function of that rule. And so the court has distinguished between substantive rules and procedural rules in terms of their function. Not necessarily, for example, just because a someone is, a ruling is finding a vagueness in a residual clause, doesn't mean that's necessarily substantive or procedural. You have to look to the function of that rule in a particular case, in a particular context. A substantive rule is something that either takes a certain conduct outside the scope of a criminal prohibition, or it makes someone eligible for criminal punishment that is, it makes someone ineligible for a certain particular criminal punishment, takes a certain class of individuals and says, they are no longer eligible for this criminal punishment. So in that category, you would find, for example, the cases by the Supreme Court holding that certain juvenile offenders are just not eligible for life without parole. And that is also where the Johnson decision falls as well, because it took a certain class of individuals and said, they are no longer subject to 15 years to life. They are now only subject to 10, to zero to 10 years in imprisonment. So it changed and made them ineligible. They're no longer authorized by law to receive the sentence that they received. And that's why it's a substantive rule. Now, the rule of Johnson as applied to the mandatory guidelines functions procedurally, because even if the residual clause of the mandatory guidelines is void for vagueness, assuming that it can be void for vagueness and it is void for vagueness, that only channels the discretion of the district court judge, and it doesn't make Mr. Green ineligible for the sentence he received. If it were to go back and he were to be sentenced, he could receive the same exact sentence. He can receive a higher sentence. He's still subject to the sentence, which in the statutory range that he was subject to previously. Can I just ask you just two fairness type questions? One was, when Mr. Green was sentenced, no court had held that the residual clause could be void for vagueness. I mean, as your friend said, I mean, it really wasn't even on the radar screen. Is it really fair to tag that on him now, many years later after jurisprudence has advanced so much? I think you're referring to our cause and prejudice argument. Yes. I mean, frankly, we think the better route there is to rely on prejudice, because that's clearly... Say that again, the better route is? The better route is to rely on prejudice rather than... We believe he has not shown cause, because we think he had the tools to assert a vagueness challenge at that time. And people were asserting vagueness challenges through the residual clause language, certainly in the ACCA. And people were asserting vagueness challenges to various guidelines provisions at that time. He certainly was not foreclosed from that. So the Supreme Court was not until 2007 that the Supreme Court said that the residual clause in the ACCA was vague. And this court had entertained and had never specifically foreclosed vagueness challenges to the guidelines. We believe prejudice is the easier course in terms of cause and prejudice. The reason is because you say he's a career offender no matter what. Yes, Your Honor. And he has... His instant defense of conviction is assault with the intent to commit murder. That falls under the generic definition... But what about... Your friend points out that there's some question, perhaps, under Ninth Circuit law about that. Under assault with intent to murder, Your Honor? I believe so. I can't remember exactly what his argument was, but perhaps you heard... I think he may have been alluding to... So under Ninth Circuit law, it's clear that at the time of Mr. Green's sentencing that California robbery categorically qualified as generic robbery, either a combination of generic robbery and generic extortion under those enumerated offenses in the career offender commentary. Now, later, within the last... I think it might be in the last couple of years, the guidelines changed the definition of extortion. And so an open question in the Ninth Circuit is whether under this narrower definition of extortion, California robbery now qualifies as a combination of robbery and extortion. But it's clear that the Ninth Circuit, and I believe other circuits, had concluded that California robbery under the guidelines, in effect, at the time of Mr. Green's sentencing, fell under the enumerated offenses of robbery and extortion as those terms were used at that time. So odd, though, that the clauses are virtually identical, aren't they? Under the advisory guidelines and the mandatory guidelines? Yes, Your Honor. Under the mandatory guidelines, as Mr. Green is arguing, he cannot have the benefit of resentencing, even though we're talking about identical language. And that's the same with the advisory guidelines, Your Honor. It's the exact same language... It was the exact same language there. And the only question is, the preliminary question, are the guidelines, are the mandatory guidelines subject to vagueness challenges? The Court said no with respect to the advisory guidelines in Beckles. Our reading of Beckles is that that also applies to the mandatory guidelines. We're not saying... Why do you suppose? Is there a rationale for that, or do we just have to accept it the way it is? Is there a rationale basis for why the void for vagueness challenge can be mounted to the advisory guidelines but not the mandatory guidelines? Well, the reasoning of Beckles is that the problems of notice and arbitrary enforcement arise only in the context of statutes-fixing sentencing. It doesn't arise in purely discretionary sentencing, even, if there were no guidelines whatsoever. And it doesn't arise even with bided discretion in terms of the advisory guidelines. It does apply with mandatory statutes that fix sentence. The question is, where do the mandatory guidelines fall on that continuum? The teaching of Beckles, as we understand it, is that the mandatory guidelines fall on the side of sufficient discretion in terms of channeling the discretion. It channels the discretion, but it does not eliminate the discretion. And therefore, the problems of notice and arbitrary enforcement do not arise in the same way they don't arise in the advisory guidelines. Thank you very much. Thank you, counsel. Just briefly, with respect to the existence of departures from the mandatory guidelines, the court in Booker pretty much discounted that as a basis for saving them from the constitutional problem that existed. And it shouldn't matter in this particular context either. The court's already dealt with that issue. Secondly, there's nothing about the core of Beckles that necessarily answers this particular question. The court was pretty careful to use the word advisory in every conceivable opportunity within that opinion and pretty careful to contrast how the advisory system worked as opposed to the mandatory system. I thought reading the opinion, the court was actually very careful in confining its ruling to this case as if to say no other case. Exactly. And that's why we think you could simply look at it as an exception to Johnson. And finally, to answer the earlier question, which was it actually was a California robbery and it's United States versus Dixon. And it's probably not necessary for the court to get down into the weeds of what law controls this. The court knows. We just had this discussion in Peppers and Mayo back in the fall. It gets very complicated as to whether you go back and use the law from the early 2000s or you use the stuff from Mathis. And in this case, the district court never even got to that issue. They simply kicked it out on a procedural matter. And rather than bog this court down with figuring out categorical, generic, and or shepherd documents, which were never submitted, we think it's better to let the district court decide in the first instance. Thank you, Your Honor. I have a question. I'm sorry, Judge, did you have a question? No, I'm sorry, I don't. Okay. Okay. Counsel, thank you. We're going to take the case under advisement. You did a great job on argument and in the briefing. And if you're amenable, we'd like to greet you with sidebar in a more personal way.